UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

STATE OF LOUISIANA                                    CIVIL ACTION

VERSUS                                                NO. 13-727-BAJ-RLB

PFIZER, INC.

# NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on June 25, 2014.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

STATE OF LOUISIANA                           CIVIL ACTION

VERSUS                                       NO. 13-727-BAJ-RLB

PFIZER, INC.

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on referral from the district judge of the plaintiff's motion to remand. (R. Doc. 8). The motion is opposed. (R. Doc. 12).[1] After careful review of the pleadings, arguments of the parties, and applicable law, it is the recommendation of the magistrate judge that the plaintiff's motion to remand should be granted.

I.  Background

On October 21, 2013, the State of Louisiana, through its Attorney General, (the "State" or "plaintiff") filed a *parens patriae* action against defendant Pfizer, Inc. ("Pfizer" or "defendant") in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana. (R. Doc. 1-2, "Petition"). The State alleges that the defendant has "engaged in false, misleading, unfair, and deceptive acts in the marketing, promotion, and sale of its antidepressant drug, Zoloft (known generically as sertraline)." (Petition, ¶ 1). The State alleges that the defendant "caused thousands of false and deceptive claims to be made to the State by manipulating published efficacy data, paying key opinion leaders to bolster Zoloft's efficacy, and deceptively concealing Zoloft's inefficacy to physicians, customers, and the State." (Petition, ¶ 1). The State alleges that the defendant's activities caused the submission of false or fraudulent claims to Louisiana's medical assistance

---

[1] The plaintiff has filed a Reply (R. Doc. 14) without leave of court. The defendant has filed a Sur-Reply (R. Doc. 16) without leave of court.

1

programs, thereby defrauding the State out of money that it would not have paid but for the defendants' illegal conduct. (Petition, ¶ 2-3).

The State acknowledges that in 1991, the U.S. Food and Drug Administration ("FDA") approved sertraline for treatment of major depressive disorder and that Pfizer released the drug the same year under the brand name Zoloft. (Petition, ¶ 16). The FDA has since approved Zoloft for the treatment of panic disorder, post-traumatic stress disorder, obsessive-compulsive disorder, premenstrual dysphoric disorder, and social anxiety disorder. (Petition, ¶ 16).

The State takes issue, however, at the efficacy of Zoloft to treat the mental disorders for which the FDA has approved its use. The State alleges that Pfizer became aware that Zoloft's primary benefit is the result of the placebo effect long before it sought FDA approval for the drug and introduced it to the market. (Petition, ¶¶ 21-22). The State alleges that when Pfizer sought approval for Zoloft from the FDA, it submitted six placebo-controlled trials of which only two of the trials "suggested that Zoloft had a minor positive impact." (Petition, ¶ 23). The State alleges that the two trials suggesting the positive impacts of Zoloft were flawed, in part because more than half of the trial subjects quit before the trials were completed. (Petition, ¶¶ 24-25). The State claims that the FDA only reluctantly approved Zoloft and the efficacy of Zoloft has since been questioned by at least one Pfizer employee, other countries, and later studies. (Petition, ¶¶ 27-31).

The State also alleges that Pfizer engaged in an extensive scheme to deceptively and deliberately conceal Zoloft's true efficacy information to mislead the State, healthcare providers, consumers, and policy makers. (Petition, ¶¶ 32-33). The State claims that Pfizer approached this scheme to defraud in three principal manners. First, the State claims that Pfizer engaged in a ghostwriting scheme in which it wrote articles promoting the efficacy of Zoloft and engaged

"prominent members of the medical field" to publish these articles in peer-reviewed journals under their own names. (Petition, ¶¶ 34-38).  Second, the State claims that Pfizer would selectively publish efficacy results by suppressing negative efficacy results or misrepresenting such results as supporting efficacy. (Petition, ¶¶ 39-43).  Third, the State claims that Pfizer engaged in widespread deceptive advertising through various media outlets by promoting "the unproven theory that depression is linked to a decrease in levels of serotonin" and that Zoloft corrects this chemical imbalance to treat depression. (Petition, ¶¶ 44-49).

The State seeks relief under six theories of recovery brought under state law: (a) Pfizer's violations of Louisiana's Unfair Trade Practices Act ("LUTPA"), La. R.S. 51:1401, *et seq*. (Petition, ¶¶ 50-51); (b) Pfizer's violations of Louisiana's Medical Assistance Programs Integrity Law ("MAPIL"), La. R.S. 46:437.1 *et seq*. (Petition, ¶¶ 52-53); (c) Fraud under La. C.C. 1953 and 2315 (Petition, ¶¶ 54-55); (d) Negligent Misrepresentation under La. C.C. 2315 (Petition, ¶¶ 56-57); (e) Unjust Enrichment (Petition, ¶¶ 58-59); and (f) Redhibition under La. C.C. 2520 *et seq*. (Petition, ¶¶ 60-61).  The State specifically alleges that the action is brought exclusively under Louisiana law, no claims governed by federal statutory law or federal common law are asserted, and that the State does not make any claims that would give rise to federal jurisdiction. (Petition, ¶ 8).  Among other things, the State seeks an award of damages, an accounting of Pfizer's profits and gains, and a permanent injunction against Pfizer.

On November 7, 2013, Pfizer removed the case alleging that the court has subject matter jurisdiction under the federal question statute, 28 U.S.C. § 1331.  (R. Doc. 1).  In support of removal, Pfizer claims that the premise of the State's state law claims "is that the FDA erred in approving Zoloft as a safe and effective medication for treating depression and, therefore, Pfizer could not market, promote or sell Zoloft for the treatment of depression." (R. Doc. 1 at 2).

Accordingly, Pfizer argues that "[b]y challenging Pfizer's marketing, promotion and sale of Zoloft for uses for which the FDA has approved it, Plaintiff is substituting its judgment of the effectiveness of Zoloft for that of the FDA, calling into question the entire regulatory scheme by which prescription drugs are approved and thereby raising a substantial federal question." (R. Doc. 1 at 2). Pfizer claims that the court has federal question jurisdiction because (1) a resolution of the State's claims depends on resolving federal issues (including whether Zoloft is "effective" within the meaning of the Food Drug and Cosmetic Act ("FDCA") and FDA regulations), (2) the FDA's approval of Zoloft is central to the parties' dispute, (3) the federal government has a substantial interest in the drug approval process, and (4) providing a federal forum will not disturb the balance of federal and state judicial responsibilities. (R. Doc. 1 at 3-9). Pfizer also alleges that this court has jurisdiction under the doctrine of complete preemption because "Congress has so thoroughly and intentionally regulated the approval of prescription medications that any challenge that calls into question such approval necessarily states a federal cause of action." (R. Doc. 1 at 9-10).

On December 9, 2013, the State filed its Motion to Remand. (R. Doc. 8).

## II. Arguments of the Parties

The State moves to remand on the basis that its Petition only raises state law claims and does not raise a federal question. The State claims that the "gravamen of the State's Petition is that the Defendant used false, deceptive, fraudulent, and misleading practices in the promotion, marketing, and sale of its antidepressant drug which resulted in the submission of false claims to the State," and resulted in the State, through its Medicaid Program, paying "for Zoloft prescriptions dispensed to Medicaid beneficiaries that otherwise would have not been prescribed but for the Defendant's conduct." (R. Doc. 8-1 at 2-3). The State argues that its state law claims

do not arise under federal law on the basis that they raise "substantial and actually disputed" federal issues. (R. Doc. 8-1 at 4). The State claims that it is not challenging the FDA approval process, which would raise federal issues under the FDCA and FDA regulations, but has instead alleged state law claims for the unlawful and deceptive promoting, marketing, and selling of an FDA-approved drug (Zoloft) for the treatment of depression. (R. Doc. 8-1 at 5-8). The State argues that allowing this action to proceed in state court, even if it does implicate federal issues, is not improper because those federal issues are not important to the federal system as a whole, and even if there is a strong federal interest in the subject matter, that is insufficient to convert the state law claims into federal claims. (R. Doc. 8-1 at 5-8). The state further argues that the complete preemption doctrine does not apply because it has not raised a "fraud on the FDA" claim and its claims "are entirely independent of the FDCA and FDA regulations." (R. Doc. 8-1 at 9-10). Finally, the State references various decisions in which courts have remanded "state-law claims against a pharmaceutical company seeking to recover Medicaid funds." (R. Doc. 8-1 at 11-14).

Pfizer argues that remand is improper because "1) Congress gave the federal courts jurisdiction over FDA decisions regarding the efficacy of prescription drugs; and 2) the State's claims raise substantial, disputed federal issues concerning the FDA's approval of Zoloft as effective for treating depression and the State's ability to refuse to reimburse Medicaid providers for Zoloft prescriptions." (R. Doc. 12 at 6). Pfizer further argues that the state had an opportunity to deny reimbursement for Zoloft under the requirements outlined in 42 U.S.C. § 1396r-8(d), but having failed to do so, cannot now refuse to reimburse providers for Zoloft prescribed for FDA-approved uses. (R. Doc. 12 at 14-15). Pfizer claims that the cases against drug manufacturers relied upon by the State are distinguishable because they involve off-label

5

marketing and promotion of drugs, as opposed to the on-label marketing of Zoloft for its FDA-approved uses. (R. Doc. 12 at 23). Pfizer characterizes the State's action as involving "fraud on the FDA" claims, and it is therefore preempted and the State cannot "second guess or challenge the policymaking and discretionary decision making processes of federal agencies." (R. Doc. 12 at 30).

### III. Law and Analysis

#### A. Federal Question Jurisdiction under *Grable*

This court has original subject matter jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Nevertheless, because federal courts are courts of limited jurisdiction, it is presumed that a suit removed to federal court lies outside this limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The party seeking removal bears the burden of demonstrating that a federal question exists. *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008). A federal question exists "if there appears on the face of the complaint some substantial, disputed question of federal law." *In re Hot–Hed, Inc.*, 477 F.3d 320 (5th Cir. 2007) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995)).

Whether a case is removable upon the basis of federal question jurisdiction is to be determined by the allegations of the plaintiff's "well-pleaded complaint" as of the time of removal. *See Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir. 2001). Because the plaintiff is the master of his complaint, even where both federal and state remedies are available on a given set of facts, there will be no basis for removal on federal question jurisdiction if the plaintiff elects in the state court petition to proceed exclusively under state law. *Avitts v. Amoco Production Co.*, 53 F.3d 690, 693 (5th Cir. 1995). That federal law may provide a defense to a

state law claim is insufficient to establish federal question jurisdiction. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328-29 (5th Cir. 2008).

Federal question jurisdiction is generally invoked by the plaintiff pleading a cause of action created by federal law. The Supreme Court has held, however, that federal question jurisdiction may exist over state law claims that implicate significant and disputed federal issues. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) (quiet title action by former landowner brought in state court against tax sale purchaser presented a removable federal question because the plaintiff alleged the IRS failed to give him independent notice of the sale as required by federal law). A federal issue is embedded in a state law cause of action, and will confer federal question jurisdiction under 28 U.S.C. § 1331, "where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (citing *Grable*, 545 U.S. at 314). The lack of a private cause of action under federal law is relevant to, but not dispositive of, the question of whether the right is substantial enough to satisfy the exercise of federal jurisdiction. *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 814 n. 12 (1986). Furthermore, the substantiality requirement looks "to the importance of the issue to the federal system as a whole." *Gunn v. Minton*, 133 S. Ct. 1059, 1066 (2013).

The Supreme Court has limited the scope of federal question jurisdiction of the type discussed in *Grable* to only a "slim category" of cases. For example, in *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), the health insurance carrier for federal employees sued to recover health insurance benefits it had paid to a former enrollee because the

enrollee had recovered damages for his injuries in a state court action. The insurer's claim arose under state contract law, but the insurer asserted that because the Federal Employees Health Benefits Act ("FEHBA") vested federal district courts with original jurisdiction to hear suits challenging the denial of benefits, the FEHBA was a necessary element of the insurer's claim. The Supreme Court concluded that this action did not "fit within the special and small category" of cases described in *Grable*. *Id.* at 699. The court distinguished *Grable* on two primary grounds. First, the dispute in *Grable* centered on action by a federal agency (the IRS) and whether that action was compatible with a federal statute. *Id*. at 700. In contrast, the dispute in *Empire* centered on action by non-government persons and entities. *Id*. Second, *Grable* "presented a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous tax cases." *Id*. In contrast, the reimbursement claim in *Empire* was "fact-bound and situation-specific." *Id*. at 701. Accordingly, the Court found that the state court was competent to apply federal law to the extent necessary to resolve the amount of the insurer's state law reimbursement claim. *Id*.

More recently, the Supreme Court concluded that 28 U.S.C. § 1338(a), which provides for exclusive federal jurisdiction over any case "arising under any Act of Congress relating to patents," does not deprive state courts of subject matter jurisdiction over malpractice claims related to federal patent infringement suits. *Gunn*, 133 S. Ct. 1059. In *Gunn*, the Court concluded that resolution of an "actually disputed" issue of federal patent law was "necessary" to resolving the malpractice claim. The Court concluded, however, that the substantiality requirement, which looks "to the importance of the issue to the federal system as a whole," was not satisfied. *Id*. at 1066. The state law inquiry into whether legal malpractice was committed would only require the state court to determine hypothetical questions of patent law. The court

8

concluded that because the substantiality requirement was not met, it followed that allowing the state court to adjudicate the action would not interfere with the appropriate federal-state balance. *Id*., at 1068.

With these precedents in mind, the court now turns to whether this action raises any disputed and substantial federal issues that are necessary to the resolution of the plaintiff's state-law claims, and, if so, whether the finding of federal jurisdiction over those state law claims would disturb the balance of federal and state judicial responsibilities. *See Singh,* 538 F.3d 334, 338 (citing *Grable*, 545 U.S. at 314).

Pfizer argues that at least two federal issues must be resolved in order to resolve the State's claims under state law. Pfizer asserts that, to prove its state law claims, the State must prove either that Pfizer committed "fraud on the FDA" by misleading or deceiving the FDA concerning the efficacy of Zoloft or that the FDA wrongly determined that Zoloft is effective. The defendant further asserts that these federal issues are actually disputed and substantial.

Reading the Petition as a whole supports a finding that the State's claims are not directed at the FDA-approval process, the FDA's ultimate decision to approve Zoloft, or any alleged acts by Pfizer to defraud the FDA. Instead, the State claims that Pfizer engaged in intentionally false, fraudulent, and misleading conduct directed at consumers, healthcare providers, pharmacists, and the State. That conduct, which the State alleges occurred both before and after the FDA approval of Zoloft, allegedly constituted an unfair method of competition, or unfair, deceptive acts or practices under the LUTPA, allegedly caused the submission of false of fraudulent claims for payment from the State's medical assistance programs, and underlie the State's state law claims for redhibition, fraud, negligent misrepresentation, and unjust enrichment. Whether Pfizer is liable under these state law claims will depend on whether its conduct is ultimately determined to

be unfair, deceptive, false, or fraudulent as defined and interpreted by the applicable state laws. The allegations as a whole do not establish that the court must resolve whether any federal law or regulation, or the FDA-approval process itself, was violated as a predicate for resolving the state law claims.

For example, to succeed on its claim for damages under MAPIL, the state must prove that the defendants violated the statute causing "false or fraudulent" claims to be made. *See Caldwell ex. Rel. Louisiana v. Bristol Myers-Squibb Sanofi Pharms. Holding P'ship*, No. 12-cv-443, 2012 WL 3866493, at *3 (W.D. La. Sept. 4, 2012) (citing La. R.S. § 46:438.3(A)). The State must prove that it paid more for Medicaid reimbursements than it would have paid absent the alleged false or fraudulent conduct. *See* La. R.S. § 46:438.6(A)(2). A determination of whether Pfizer defrauded the FDA or whether the FDA wrongly determined that Zoloft is effective are not necessary elements of the State's MAPIL claim. At most, the State's MAPIL claim will require the state court to first determine whether the State has a duty of reimbursement under the Medicaid Act because Zoloft is on the State's forumlary. Even if this inquiry meets the first prong of the *Grable* analysis, the defendants have not established that this issue of federal law is actually disputed or substantial. The state court's inquiry into the FDA approval of Zoloft would serve as background reference for the state law claims, including whether and to what degree the State has a duty to reimburse claims. Accordingly, any inquiry by the state court would concern an undisputed area of federal law that is unimportant to the federal system as a whole. *Gunn*, 133 S. Ct. at 1066.

Similarly, to succeed on a redhibition claim under Louisiana law, the plaintiff must prove the following elements: "(1) the thing sold is absolutely useless for its intended purposes, or that he would not have bought it had he known of the defect; (2) that the defect existed at the time

10

that he purchased the thing, but was neither known nor apparent to him; and (3) that the seller was given the opportunity to repair the defect." *In re Vioxx Products Liab. Litig.*, MDL 1657, 2010 WL 2649513, at *12 (E.D. La. June 29, 2010) (citing *Alston v. Fleetwood Motor Homes of Indiana*, 480 F.2d 695, 699 (5th Cir. 2007)). As with the State's MAPIL claim, the State asserts its redhibition claim under the theory that physicians in Louisiana would not have prescribed Zoloft had they known of its alleged inefficacy. (Petition, ¶ 61). As with the MAPIL claims, whether the State can recover under Louisiana's redhibition law will not turn on an interpretation of the State's reimbursement duties under Medicaid. Instead, it will turn on whether Pfizer's representations to prescribers of Zoloft resulted in sales that would not have occurred had those prescribers known that the drug is ineffective.[2] Even if this inquiry into the State's obligations under the Medicaid Act satisfies the first prong of the *Grable* analysis, the defendants have not established that this issue is actually disputed or substantial, and therefore does not raise a federal question.

In short, the State's claims turn on whether Pfizer's alleged misrepresentations caused physicians to prescribe Zoloft in the first place, not on whether the State has the authority to deny

---

[2] Pfizer argues that, in order to prove its claims, the State must prove that there is a "lack of substantial evidence that [Zoloft] will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the proposed labeling," the same standard by which the FDA determines whether a new drug may be approved under 21 U.S.C. § 355(d). (R. Doc. 12 at 15). The State is not challenging, however, the FDA's approval of Zoloft under FDA regulations and the FDCA. In other words, this is not a "fraud on the FDA" action. *See Buckman Co. v. Plaintiffs' Legal Comm*., 531 U.S. 341, 343 (2001) (state law tort claims are impliedly preempted where plaintiff alleges that "fraud on the FDA" was at least a "but for" cause of the plaintiff's alleged injuries). The State asserts that Pfizer made certain fraudulent representations about the efficacy of Zoloft that led physicians to prescribe Zoloft, not that the FDA-approval of Zoloft led physicians to prescribe Zoloft.

reimbursements under the Medicaid Act in light of Zoloft's placement on the State's formulary.[3]

Courts have distinguished a state's ability to recover under state law where the defendant caused the state's Medicaid program to reimburse claims which would never have been submitted but for the violation of state law from the state's authority under the Medicaid Act to prospectively refuse reimbursement. *See Bristol Myers-Squibb Sanofi*, 2012 WL 3866493, at *3 (finding no question of federal law required resolution as a predicate to resolving a state law MAPIL claim for recovery regarding allegedly fraudulently obtained reimbursement for prescription drugs because the State could prove its MAPIL claim "by merely showing that the defendants' false or misleading advertising caused physicians to write prescriptions they would not have written had they known all of the facts, since obviously the state would not have to pay claims that were never made") (citing *New Mexico v. Ortho–McNeil–Janssen Pharms., Inc.,* No. 08–0779, slip op., at 4 (D.N.M. Jan. 26, 2009)).

Courts have refused to find federal question jurisdiction under *Grable* where a state brings state law claims in a *parens patriae* action against a pharmaceutical company, but also alleges that the pharmaceutical company defrauded the FDA. For example, the Eastern District of Louisiana refused to find federal question jurisdiction under *Grable* where a complaint contained "lengthy and detailed factual allegations" regarding a pharmaceutical company's "development, testing, and marketing" of an FDA-approved drug, including "factual allegations

---

[3] The State is entitled to create its own formulary that excludes an FDA-approved drug that, based on information on the label, "does not have a significant, clinically meaningful advantage in terms of safety, effectiveness, or clinical outcome." *See* 42 U.S.C. § 1396r-8(d)(4). Pfizer argues that interpretation of this federal statute is necessary and substantial because it provides the procedures and reviews required for the State to remove an FDA-approved drug from its formulary. (R. Doc. 12 at 13-15). The State is not, however, seeking to remove Zoloft from its formulary or challenging that the drug is on its formulary. Instead, it is seeking damages for Pfizer's alleged intentionally false, fraudulent, and misleading conduct directed at consumers, healthcare providers, pharmacists, and the State that caused Zoloft to be prescribed over other FDA-approved drugs.

that certain study results 'were not disclosed to the FDA or the public at the time of the product launch' and that [the pharmaceutical company] gave misleading testimony at a public hearing before the FDA." *In re Vioxx Products Liability Litig.*, 843 F. Supp. 2d 654 (E.D. La. 2012) (quoting complaint). The court concluded that, despite these allegations, the state law "claims in the complaint do not depend on necessary resolution of a substantial federal question," stating that although the pharmaceutical company's "conduct may be assessed against the backdrop of federal regulation, the gravamen of the complaint is whether [the pharmaceutical company's] conduct independently violated the [Kentucky Consumer Protection Act]." *Id*. at 669-70. The court found that even though the federal regulatory scheme under the FDCA may be implicated, "compliance or lack thereof is, at most, an element of [the] state-law cause of action, which the Supreme Court has held does not create federal question jurisdiction." *Id*. at 670; *see also Texas v. Merck & Co., Inc.*, 385 F. Supp. 2d 604 (W.D. Tex. 2005) (finding no federal question jurisdiction where Texas alleged that it had placed an FDA-approved drug on its Medicaid formulary based on misrepresentations by the pharmaceutical company of the safety of the drug).[4]

The *Merrell Dow* decision, which preceded *Grable* by nearly two decades, supports the conclusion that the State's claims do not raise a substantial federal issue. *See Merrell Dow*, 478

---

[4] Pfizer argues that this court should follow an MDL ruling from the Eastern District of New York concluding that it had federal question under *Grable* where the State of Louisiana brought state claims similar to those in this action for which a drug was allegedly prescribed and used for "off-label" purposes. *See In re Zyprexa Products Liability Litigation*, 375 F. Supp. 2d 170, 172 (E.D.N.Y. 2005). That decision is not binding on this court and has been rejected by other district courts within this circuit and elsewhere. *See, e.g.*, *Hood v. AstraZeneca Pharm., LP*, 744 F. Supp. 2d 590, 602 (N.D. Miss. 2010) (finding *Zyprexa* unpersuasive); *Baker v. Johnson & Johnson*, 709 F. Supp. 2d 677, 689 (S.D. Ill. 2010) (same). Furthermore, this court has refused to find jurisdiction under *Grable* where the state law claims alleged a drug was promoted and marketed for improper off-label uses. *See Louisiana ex. rel. Caldwell v. Abbott Labs*, No. 11-cv-542 (M.D. La. Mar. 28, 2012), Dkt. Nos. 14, 17. Accordingly, the *Zyprexa* decision, which was decided by another district court, carries no weight.

U.S. 804. In *Merrell Dow*, the defendant removed a state court petition that alleged only state law claims of negligence, breach of warranty, strict liability, fraud, and gross negligence against the manufacturer of the prescription drug Bendectin. The plaintiff alleged that because the label on the drug did not adequately warn that its use was potentially dangerous, it was misbranded in violation of the FDCA, and this created a rebuttable presumption of negligence under state law. The Court held that the complaint alleging a violation of the FDCA as an element of a state law cause of action did not give rise to a federal claim under § 1331. As explained in *Grable*, the important factors at work in *Merrell Dow* that led to this conclusion were: (1) Congress did not create a private remedy for violations of the FDCA, or federal preemption of state remedies for misbranding; (2) if alleging the violation of federal standards for labeling prescription drugs could get a state claim into federal court, so could alleging the violation of any other federal standards without a federal cause of action; and, (3) this would result in a large number of cases raising other state law claims with embedded federal issues being filed in and removed to the federal courts. *Grable*, 545 U.S. at 317-319.

The same issues addressed in the *Merrell Dow* decision are implicated by this case. There is no private right of action under the FDCA. *Merrell Dow*, 478 U.S. 804. The State has brought state law claims under MAPIL, LUTPA, redhibition, fraud, negligent misrepresentation, and unjust enrichment. Even assuming that these claims may require the state court to determine the federal standards for prescription drug approval and labeling, allowing these state law claims to create federal question jurisdiction in the absence of a federal cause of action would result in the removal of nearly any action by a state's attorney general against a pharmaceutical company regarding prescription drugs.

Finally, unlike the "nearly pure question of law" presented in *Grable*, where the federal issue was dispositive of the case and would be controlling in numerous other cases, this action involves a highly "fact bound and situation-specific" inquiry regarding the defendants' allegedly fraudulent conduct. *McVeigh*, 547 U.S. at 700-701. The state court is equipped to engage in this inquiry and resolve undisputed and non-substantial issues of federal law as required for resolving the state law claims. Having concluded that there are no actually disputed and substantial issues of federal law, the court need not engage in further analysis of whether finding federal question jurisdiction would disrupt the balance of federal and state judicial responsibilities.

      **B.**      **Federal Question Jurisdiction under the Complete Preemption Doctrine**

The complete preemption doctrine provides an alternative, though similar, ground for federal question jurisdiction. Pfizer claims that the complete preemption doctrine applies in this case because the plaintiff's claims involve a highly regulated area of federal law governed by the FDCA and FDA regulations.

The complete preemption doctrine creates a narrow exception to the well-pleaded complaint rule, allowing removal of an otherwise unremovable state court action where Congress has "so completely preempt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *See Johnson v. Baylor Univ.,* 214 F.3d 630, 632 (5th Cir. 2000) (quoting *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). Unlike ordinary preemption, complete preemption is jurisdictional in nature, and "[a]s such, it authorizes removal to federal court even if the complaint is artfully pleaded to include solely state law claims. . . ." *Johnson*, 214 F.3d at 632 (quoting *Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493, 500 (5th Cir. 1999)). To establish complete preemption, the removing defendant must establish three elements:

15

> (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable.

*Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000) (citing *Heimann,* 187 F.3d at 500). "[F]ew federal statutes can meet such an exacting standard." *Heimann,* 187 F.3d at 500.

The defendant has not alerted the court to any decision concluding that the FDCA completely preempts state court actions such as those brought by the State in this case. As stated above, there is no private right of action under the FDCA. *See Merrell Dow*, 478 U.S. 804. Accordingly, the court finds that there is no complete preemption under the FDCA, as alleged by Pfizer, because the FDCA does not contain a civil enforcement provision. *See Dawson ex rel. Thompson v. Ciba-Geigy Corp., USA*, 145 F. Supp. 2d 565, 573 (D.N.J. 2001) ("This Court declines to extend the doctrine of complete preemption to the FDCA, in light of Congress' determination that no private right of action exist for violations of that statute."); *Dillon v. Medtronic, Inc.*, No. 13-105, 2014 WL 37759, at *8 (E.D. Ky. Jan. 6, 2014) ("[T]here is no complete preemption here because the FDCA specifically disclaims a private cause of action.") (citing 21 U.S.C. § 337(a)); *see also Scott v. Pfizer Inc.*, 182 F. App'x 312, 315 (5th Cir. 2006) (noting that the neither the FDCA nor the Medical Device Amendments (MDA) to the FDCA create a private cause of action, and stating that the "MDA does not completely preempt state products liability law.").

## IV.     Conclusion

This court does not have subject matter jurisdiction over this action under the federal question statute. The State has raised various State law claims alleging that Pfizer deceptively promoted, marketed and sold Zoloft to physicians and patients, which resulted in the State

16

reimbursing those prescriptions through its Medicaid Program. The State has not raised a federal question by alleging that Pfizer defrauded the FDA when it sought approval of Zoloft or that the FDA wrongly approved the use of Zoloft. Furthermore, because there is no private cause of action under the FDCA, the FDCA does not completely preempt the state laws alleged in the Petition.

## **RECOMMENDATION**

For the foregoing reasons, it is the recommendation of the magistrate judge that the Plaintiff's Motion to Remand (R. Doc. 8) should be **GRANTED** and the instant action should be **REMANDED** to the 19th Judicial District Court, East Baton Rouge Parish, Louisiana.

Signed in Baton Rouge, Louisiana, on June 25, 2014.

_____
**RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE**